IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 10, 2002 Session

## ALISON LOUGHEED RINNER v. ROBERT ANDREW RINNER

**Appeal from the Circuit Court for Davidson County**
**No. 99D-2196     Muriel Robinson, Judge**

_____

**No. M2001-02307-COA-R3-CV - Filed February 6, 2003**

_____

This is a divorce case. The father and mother were both forty-one years old and had a six-year-old daughter. The trial court ordered the father to pay rehabilitative alimony, child support, and a portion of the mother's attorney's fees. On appeal, the father argues that the trial court improperly considered bonus money the father had received, that it erred in not ordering that child support on income in excess of $10,000 be placed in trust, that it erred in ordering him to pay rehabilitative alimony and a portion of the mother's attorney's fees, and also erred in failing to assign tax liability regarding certain stock options. We affirm the trial court's calculation of child support, the decision not to pay a portion of the child support into a trust, the order to pay rehabilitative alimony and a portion of the mother's attorney's fees, and find that the trial court was not required to assign tax liability as to the stock options.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Charles G. Blackard, III, Brentwood, Tennessee, for appellant, Robert Andrew Rinner.

Rose Palermo, Nashville, Tennessee, for appellee, Alison Lougheed Rinner.

**OPINION**

Plaintiff/Appellee Alison Lougheed Rinner ("Mother") and Defendant/Appellant Robert Andrew Rinner ("Father") were married in 1989. The parties have one minor child, a daughter, Kristen, born in 1994. Mother filed for divorce on July 28, 1999, alleging irreconcilable differences. Father remained in the home until June 2000.

At the time Mother filed for divorce, consent orders were entered setting child and spousal support, as well as visitation with Kristen. These orders stayed in effect until the hearing on the divorce. On January 17, 2001, pending the final hearing, the trial court ordered that Father refrain from disposing of certain bonuses. The value of these "frozen" bonuses was $37,000.

Prior to the parties' marriage, Mother obtained her college degree as well as a graduate degree in advertising, and worked in marketing in Dallas, Texas. Father is a financial analyst. After marriage, the parties relocated to Charlotte, North Carolina for Father's job as an equity portfolio manager, managing equities or stocks. Mother found other employment in North Carolina, earning approximately $55,000 in 1992. In 1994, the parties adopted Kristen. Thereafter, by agreement of the parties, Mother stayed at home to raise their child, except for limited part-time employment in 1994 and 1995. The family moved to Tennessee in 1996. Throughout this time, Father continued to work as a portfolio manager for different entities. In 1998, he earned $160,735, and in 1999, he earned $195,799. In 2000, Father earned $255,034; however, this included a one-time employment buyout bonus of $58,935 and capital gains of $11,771.

In pleadings filed prior to the hearing, Father proposed that he receive sixty percent of the marital property. He argued that he should receive more than fifty percent of the marital estate because his efforts increased the value of the marital estate since Mother filed for divorce. He maintained that bonuses should not be included in calculating his child support obligation because it was uncertain whether he would receive bonuses in the future. Father proposed that Mother receive no alimony, and that Mother pay Father child support during the summer months in which the parties' child would reside primarily with Father. In Mother's pleadings, she proposed to divide the assets equally and purchase Father's equity in the marital home, and that she receive $3000 per month in rehabilitative alimony for four years.

The hearing was on June 4, 2001. At that time, both parties were forty-one years old and Kristen was six years old. The parties agreed that custody would be awarded to Mother.

The primary disputes at the hearing were the calculation of Father's income in order to determine child support and whether Mother should receive rehabilitative alimony. On the issue of child support, the parties each had an expert witness. The experts presented conflicting testimony on determining Father's child support obligation based on his past income and bonuses. Father argued that the one-time buyout and capital gains income for 2000 should not be included in his income to calculate the child support obligation. The trial judge ordered the two experts to meet together and then present their combined computations to the trial court. After meeting, the experts offered to the trial court several methods for calculating Father's income. Based on these, the experts concluded that Father's monthly child support obligation could range from a high of $3,222, based on his 2001 projected income of $264,700, to $2,468 per month, based on an average of Father's income from 1998 to 2000, to a low of $2,231, based on an average of Father's 1998 to 2000 income, excluding the one-time buyout bonus and capital gains for 2000.

Mother testified at the hearing regarding her efforts to obtain employment since the beginning of the divorce proceedings. Mother testified that she applied for numerous jobs, interviewing for various positions for a period of over a year. She was finally offered a position with The Buntin Group, a Nashville advertising agency, at a salary of $95,000. Mother testified that she had difficulty with the demands of the job. She was criticized for being inadequately prepared, and explained that, because it had been over fourteen years since she had worked with an ad agency, "it would take me a while to come up to speed." Mother also had difficulty balancing the long hours required, including meetings before or after normal business hours and out-of-town travel, with her child-rearing obligations. After working for Buntin for less than two months, Mother's employment was terminated. The stated reason on the separation notice for the termination was that Mother's "skills do not meet the needs of our company." After looking unsuccessfully for comparable employment, Mother decided that the best solution to provide stability and mesh with the demands of raising Kristen was to go into teaching. Toward that end, she enrolled fulltime at the local university taking education classes. Mother testified that it would take approximately three years for her to become certified to teach.

At the conclusion of the hearing, the trial judge found Father's income, for purposes of determining child support, to be $188,620. This figure was calculated by averaging Father's income in 2000, 1999, and 1998, and subtracting his one-time bonus and capital gains from 2000. Based on this, child support was set at $2,231 per month. In addition, the trial court offered to meet with the parties in April 2002, after their 2001 taxes were filed, in order to redetermine child support if necessary. On the issue of rehabilitative alimony, the trial court said that Mother's "request for [rehabilitative] alimony [was] reasonable due to the fact she is unemployed," and that Father's "proof about why [Mother] didn't hold down [her] job [was] completely nonexistent here." Commenting on Mother's job with the Buntin advertising agency, the trial court said that Mother was not "competent to handle [the job] at this time." The trial judge awarded Mother $1,752 per month in rehabilitative alimony, plus $248 per month for insurance premiums for a total of $2,000 per month, for thirty-six months. The trial court also awarded Mother $8,500 of the $16,968.50 in attorney's fees that she requested, "mainly because [Father] was unreasonable in his requests here."[1] After the trial court issued its final decree, Father filed a motion to alter or amend. This was denied. From this order, Father now appeals.[2]

On appeal, Father argues that the trial court erred in (1) ordering him to refrain from spending bonus money he received from his employer, then using those funds in calculating his child support obligation, and at the same time dividing the funds as marital property; (2) using non-recurring one-time bonuses in computing Father's child support obligation; (3) awarding child support based on

---

[1] The trial judge also stated that "because of the way the parties treat each other" it was necessary "to issue certain restraining orders." Mother was enjoined from ". . . yelling at the [Father] or making derogatory remarks to or about him in the presence of the parties' minor child . . . ," while Father was restrained from ". . . belittling the [Mother], yelling at her, or making derogatory or condescending remarks to or about the [Mother] in the presence of the parties' minor child."

[2] Father apparently changed counsel at some time between the final hearing and his appeal to this Court.

his monthly net income over $10,000 without placing the excess funds into a trust; (4) awarding Mother rehabilitative alimony in the amount of $2,000 per month for thirty-six months; (5) failing to assign tax liability regarding the division his stock options; and (6) ordering Father to pay $8,500 of the $16,968.50 Mother requested in attorney's fees. Mother seeks an affirmation of the trial court's decision plus her attorney's fees for this appeal.

Because this case was heard by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court below, unless the evidence preponderates otherwise. *See* Tenn. R. App. P. 13(d); ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995). Questions of law are reviewed *de novo* without a presumption of correctness. ***Burlew v. Burlew***, 40 S.W.3d 465, 470 (Tenn. 2001) (citation omitted). In setting the amount of child support, the trial court is to determine, on a case-by-case basis, the most appropriate way to average fluctuating income. ***Tinsley v. Tinsley***, No. M2001-02319-COA-R3-CV, 2002 Tenn. App. LEXIS 778, at *13 (Tenn. Ct. App. Nov. 1, 2002) (citing ***Smith v. Smith***, No. M2000-01094-COA-R3-CV, 2001 Tenn. App. LEXIS 320, at *17-18 (Tenn. Ct. App. May 2, 2001)). The time period over which the income is averaged is left to the discretion of the trial court. ***Tinsley***, 2002 Tenn. App. LEXIS, at *13. In reviewing an alimony award or a division of marital property, the appellate court will not overturn the judgment of the trial court unless the award evidences an abuse of discretion. ***See Lindsey v. Lindsey***, 976 S.W.2d 175, 179, 180 (Tenn. Ct. App. 1997). Likewise, an award of attorney's fees is also reviewed by this Court under an abuse of discretion standard. ***Langschmidt v. Langschmidt***, 81 S.W.3d 741, 751 (Tenn. 2002) (citing ***Aaron v. Aaron***, 909 S.W.2d 408, 411 (Tenn. 1995); ***Fox v. Fox***, 657 S.W.2d 747, 749 (Tenn. 1983)).

Father argues first that the trial court erred in including $37,000 in bonus money in the calculation of his child support obligation, and then later dividing those funds as marital property. Pending the final hearing, the trial court had ordered Father not to dispose of the funds. On appeal, Father asserts that considering the $37,000 bonus in the computation does not conform to the calculation of the obligor parent's income under the Uniform Guidelines for Child Support, and allows Mother to "double dip," or force Father to pay two times for the same obligation. Father also maintains that the funds should not have been divided as marital property because he expected to use them to pay his child support. Father notes that, although the funds were earned in 2000, half of the funds were not paid to him until 2001; consequently, he argues that it was erroneous to include the bonus in the calculation of his income. Thus, Father asserts that he is forced to pay his child support obligation with money he was paid in 2001.[3]

Under Rule 1240-2-4-.03(2) of the Rules and Regulations of the State of Tennessee, an award of child support is based on a flat percentage of the obligor parent's net income, as defined in subsection .03(4) of the Rule. Subsection .03(4) requires the calculation of gross income as defined in subsection .03(3). Subsection .03(3)(a) in turn defines gross income as: "[A]ll income from any source . . . and includes but is not limited to . . . wages, salaries, commissions, bonuses . . . ." Tenn.

---

[3] Father relies on ***Brooks v. Brooks***, 992 S.W.2d 403 (Tenn. 1999); however, ***Brooks*** involved capital gains and is inapplicable to the facts presented here.

Comp. R. & Regs. R.1240-2-4-.03(a) (1997). Thus, bonuses are expressly included in the definition of gross income. Including them in the calculation of Father's net income was not erroneous.

Father argues that the bonuses should not have been "frozen" and divided as martial property, and also utilized to calculate his child support obligation. This argument does not make sense. Under this logic, any asset purchased with Father's income could not be divided as marital property, or the value of the marital property would have to be deducted from the calculation of Father's child support obligation. This decision of the trial court is affirmed as well.

Father asserts that half of the bonus monies were paid in 2001, and therefore should not have been included in his 2000 income when computing his child support obligation. Father's W2 Wage and Tax Statement indicates that Father's "Medicare wages and tips" for 2000 were $255,033.53, and this figure was apparently utilized in calculating Father's child support obligation. We find it was not error to do so.

Father next argues that, because he testified that his 2001 bonus plan was to be modified from his bonus plan of previous years, the trial court should not have considered his past bonuses in determining his child support obligation.[4] However, although Father testified that his bonus plan in 2001 would change, the proof showed that, three months into 2001, Father had already earned $31,000 in bonuses. This gave the trial court ample reason to be skeptical of Father's testimony. Moreover, as noted above, the trial court properly included Father's bonuses in calculating his income to determine his child support obligation. *See* Tenn. Comp. R. & Regs. R. 1240-2-4-.03(3)(a) (1997); *Anderton v. Anderton*, 988 S.W.2d 675, 680 (Tenn. Ct. App. 1998). The bonuses are to be averaged over a period determined by the trial court. *Id.*; *see Tinsley v. Tinsley*, No. M2001-02319-COA-R3-CV, 2002 Tenn. App. LEXIS 778, at *13 (Tenn. Ct. App. Nov. 1, 2002) (citations omitted). The period should be determined on a case-by-case basis and might range from one year to four years. *See Tinsley*, 2002 Tenn. App. LEXIS 778, at *13. The record shows that, after the parties' experts conferred and gave the trial court an array of methods for calculating Father's income to determine child support, the trial court selected the method most favorable to Father, which averaged his income for 1998, 1999, and 2000, and excluded the one-time buyout bonus and the capital gains for 2000. In addition, the trial court offered to revisit the calculation of child support after Father knew the amount of his 2001 income, and knew how much he received in bonus monies. Overall, the trial court's calculation of Father's child support obligation gives him little reason to complain, and his assertions of error are without merit.

Father next argues that the trial court erred in failing to order that the child support based on his income in excess of $10,000 per month be placed in an educational trust fund for the parties' child. Under the Child Support Guidelines, an obligor with a net income of $10,000 per month will pay $2,100 per month in child support for one child. In this case, Father's child support obligation

---

[4] Father relies on *Lowenkron v. Lowenkron*, No. E1999-00332-COA-R3-CV, 2000 Tenn. App. LEXIS 155 (Tenn. Ct. App. Mar. 15, 2000). The primary issue in *Lowekron*, however, was the calculation of child support for an obligor parent with net income over $10,000 per month, not the issue for which Father cites it.

is $2,231 per month, a difference of $131 per month. Father maintains that this difference of $131 per month should go to an educational trust fund for Kristen, rather than to Mother. Father argues that, under current law, when child support obligations are based on a net income of over $10,000 per month, the custodial parent bears the burden of proving that the excess funds are reasonably necessary to provide for the needs of the child, and that the trial court is required to make a written finding on whether the excess child support is reasonably necessary. *See* Tenn. Code Ann. § 36-5-101(e)(1)(B) (2001).[5] Regardless, the statute cited by Father was not in effect at the time of the hearing in the trial court below.[6] At the time of the hearing, the obligor had the burden of proving that child support based on a net income greater than $10,000 per month was not reasonably necessary to provide for the needs of the child.[7] *See* Tenn. Comp. R. & Regs. R. 1240-2-4-.04(3) 1997). Father offered no evidence at the hearing that the excess funds were not reasonably necessary to provide for Kristen. Accordingly, we find no error in the trial court's order that the entire amount of the child support be paid to Mother, rather than to an educational trust fund.

Father next argues that the trial court erred in awarding Mother rehabilitative alimony in the amount of $2,000 per month for thirty-six months. Father asserts that Mother is educated and capable of supporting herself, and that rehabilitative alimony is not intended to assist a spouse who is already self-supporting in establishing a new career.

---

[5]Section 36-5-101(e)(1)(B) provides:

> Notwithstanding any provision of this section or any other law or rule to the contrary, if the net income of the obligor exceeds ten thousand dollars (10,000) per month, then the custodial parent must prove by a preponderance of the evidence that child support in excess of the amount . . . is reasonably necessary to provide for the needs of the minor child . . . .

Tenn. Code Ann. § 36-5-101(e)(1)(B) (2001).

[6]The trial was held on June 4, 2001. The divorce decree was issued on June 27, 2001. Section 36-5-101(e) was amended on July 18, 2001. *See* 2001 Tenn. Pub. Acts 447.

[7]The Rule states:

> . . . . when the net income of the obligor exceeds $10,000 per month, the Court may consider a downward deviation from the guidelines if the obligor demonstrates that the percentage applied to the excess of the net income above $10,000 a month exceeds a reasonable amount of child support based upon the best interest of the child and the circumstances of the parties. . . .

Tenn. Comp. Rules & Regs. R. 1240-2-4-.04(3) (1997). Although the new statute is now in effect, the Regulation apparently has not yet been changed. At any rate, only the Regulation was in effect at the time of the hearing in the trial court below.

In setting alimony, the court considers the factors set forth in section 36-5-101(d)(1)(A)-(L) of the Tennessee Code Annotated.[8] The court must first determine if the spouse requesting alimony is economically disadvantaged, then consider all relevant factors enumerated in section 36-5-101(d)(1)(A)-(L), and any other pertinent facts, to determine if rehabilitation of the disadvantaged spouse is feasible. ***Robertson v. Robertson***, 76 S.W.3d 337, 338 (Tenn. 2002); ***Crabtree v. Crabtree***, 16 S.W.3d 356, 358 (Tenn. 2000). The two most important factors are the obligee's need for the alimony and the obligor's ability to pay. ***Burlew v. Burlew***, 40 S.W.3d 465, 470 (Tenn. 2001) (citations omitted). One purpose of rehabilitative alimony is to allow the recipient spouse to become more self-sufficient. ***Kinard v. Kinard***, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998). Once it has been determined that alimony is needed and rehabilitation is feasible, the trial court then considers the factors in section 36-5-101(d)(1)(A)-(L) in setting the amount of alimony. ***See Robertson***, 76 S.W.3d at 340. The award of alimony is not intended to place one spouse on equal

---

[8]The factors enumerated in section 36-5-101(d)(1)(A)-(L) are:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1)(A)-(L) (2001).

footing with the other, or allow one spouse to live in the manner that she was accustomed to during the marriage. **Robertson**, 76 S.W.3d at 340; **see Crabtree**, 16 S.W.3d at 359-60. Rather, "a trial court must consider every relevant factor in § 36-5-101(d)(1) to determine the nature and extent of support, which includes the decision to award rehabilitative alimony." **Id.**

In support of his assertion that rehabilitative alimony is not needed, Father cites **Burlew v. Burlew**, 40 S.W.3d 465 (Tenn. 2001). In **Burlew**, the husband was a physician. The wife had a bachelor's degree, a master's degree in nursing and a law degree. **Burlew**, 40 S.W.3d at 468. She had worked prior to the birth of the parties' child, but after that she stayed home to raise their child. At the time of the parties' divorce, the wife was studying to obtain a master's degree in business administration. **Id.** The trial court awarded the wife $220,000 in alimony *in solido* to be paid over eight years, but no rehabilitative or *in futuro* alimony. **Id.** at 469. The court of appeals added an award of rehabilitative alimony. **Id.** The Tennessee Supreme Court noted that the wife received almost sixty-one percent of the marital estate as well as $220,000 alimony *in solido*. **Id.** at 473. In light of this, and considering the abuse of discretion standard of review, the supreme court upheld the trial court's decision not to award rehabilitative alimony.

In this case, Mother did not receive a disproportionate share of the marital property, nor did she receive alimony *in solido*. Although Mother worked early in the parties' marriage, her career was significantly impacted by the parties' relocation to other cities to facilitate Father's career. After Kristen was adopted, both parties agreed that Mother would primarily be at home to raise her, and any outside work at that point was sporadic at best. After the divorce became imminent, Mother spent nearly a year sending out resumes and seeking employment. She finally obtained a position as an advertising executive at $95,000 per year, but after a fourteen-year absence from employment in advertising, nearly six years as a homemaker, and in light of her responsibilities as Kristen's primary caretaker, she was unable to handle the demands of the job. The trial court held that Mother's

> request for [rehabilitative] alimony is reasonable due to the fact she is unemployed. [Father's] proof about why she didn't hold down this job is completely nonexistent here. . . . I don't find that she abused that job or anything. I find out from the proof really she wasn't competent to handle it at this time.

In view of this, Mother determined that the best course for her to become self-sufficient and fulfill her responsibilities as primary caretaker for Kristen would be for her to become a teacher. Obtaining the necessary degree and certification would require three years. In the hearing below, Mother sought $3,000 per month in rehabilitative alimony for four years. The trial court awarded her $2,000 per month for three years.

As noted in **Burlew**, discussed above, the standard of review for the trial court's decision on alimony is abuse of discretion. **Burlew**, 40 S.W.3d at 473. After reviewing the record, we find that Mother's decision to become certified as a teacher is a reasonable one, designed to enable her to become self-sufficient and still function as Kristen's primary caregiver. The trial court's award of

rehabilitative alimony can only be characterized as modest. Father's arguments are without merit, and the award of rehabilitative alimony is affirmed.

Father next argues that the trial court erred when it ordered him to divide his stock options with Mother but did not assign the tax liability regarding those options. In his motion to amend the final decree, Father requested, inter alia, that the trial court change the decree to reflect that each party is responsible for the tax consequences of the stock options that party receives, and to hold the other party harmless. The trial court denied Father's motion to amend in its entirety.

On appeal, Father points to no law requiring the trial court to assess tax liability when dividing marital property. Section 36-4-121(c)(9) of the Tennessee Code Annotated requires that the trial court consider the tax consequences to each party of the property division. Tenn. Code Ann. § 36-4-121(c)(9) (2001). It does not, however, require the court to assign tax liability to either party. Consequently, we find no error in the trial court's decision not to assign tax liability regarding the division of Father's stock options.

Next, Father argues that the trial court abused its discretion when it awarded Mother $8,500 of the $16,968.50 in attorney's fees and expenses she requested. Father asserts that the marital assets Mother received are sufficient to allow Mother to pay her own attorney's fees. The trial court's award of attorney's fees was premised on its finding that Father was "unreasonable in his requests" during the trial. From our review of the record, we agree. We find no abuse in the trial court's relatively modest award of attorney's fees.

Finally, Mother requests that Father pay her attorney's fees on this appeal. We find such an award to be warranted. The trial court's decree was modest and, overall, favorable to Father, and his arguments in this appeal can be described as flimsy at best. The cause is remanded to the trial court to determine a reasonable amount of attorney's fees.

The decision of the trial court is affirmed as set forth above. Mother's request for attorney's fees for this appeal is granted and the cause remanded for a determination of the reasonable amount of such fees. Costs are taxed to the appellant, Robert Andrew Rinner, and his surety, for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE